UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 85-489-RGS

UNITED STATES OF AMERICA

v.

METROPOLITAN DISTRICT COMMISSION, et al.

CIVIL ACTION NO. 83-1614-RGS

CONSERVATION LAW FOUNDATION
OF NEW ENGLAND, INC.

v.

METROPOLITAN DISTRICT COMMISSION

<u>SCHEDULE SEVEN COMPLIANCE ORDER NUMBER 252</u>

May 11, 2023

STEARNS, D.J.

On April 28, 2023, the Massachusetts Water Resources Authority (MWRA) submitted the second of three scheduled Annual Reports, this one is for the calendar year 2022.[1]  Rather than rehearse a well-documented

---

[1] On May 9, 2023, the United States indicated that it would file no comment on the Annual Report.  On May 10, 2023, the Conservation Law Foundation (CLF), while not submitting direct comments of its own, forwarded the letter comments of the Charles River Watershed Association (CRWA) and Mystic River Watershed Association (MRWA).  The joint letter

chronicle of impressive progress, the court will highlight two measures of achievement before turning to the remaining, and perhaps insurmountable, challenges.

First, the volume of the Combined Sewer Overflow (CSO) discharge into Boston Harbor and the tributary rivers has been reduced from the 1980's average of 3.2 billion gallons annually, to 396 *million* gallons in the "Typical Year" as of the end of 2022. As the MWRA notes, this is eight million gallons less than the 404 million gallons called for by the CSO Long-Term Control Plan (LTCP). Equally impressive, on a facility-wide basis the capture/treatment rate of CSO volume has reached 99.7 percent of the total Typical Year discharge.

Second, significant progress has been made in addressing technical and engineering issues involving all but six of the sixteen underperforming outfalls (of a total of 86) identified in the 2021 Report. In summary, six of

---

praises the work of the MWRA to date on the remediation effort but seeks further information on the alternatives the MWRA is exploring to overcome the problems encountered at the six underperforming outfalls discussed in the MWRA's report to the court. While the associations are not parties to the litigation, they have over the years made valuable contributions to the clean-up of the tributaries and have worked closely with the MWRA in their efforts. Although most of the questions posed in the letter are premature given the MWRA's ongoing investigation, many raise the types of questions the court will be asking as the expiration date of the consent decree approaches.

the outfalls have been or are in final stages of being enabled to meet the LTCP goals. They are (1) SOM007A/MWR205A on the Upper Mystic River; (2) MWR205 on the Mystic River; (3) BOS014 on Chelsea Creek; (4) CHE008 on Chelsea Creek; (5) BOS009 on the Upper Inner Harbor; and (6) BOS003 on the Lower Inner Harbor.  Of the remaining ten, the MWRA is confident that four (which are currently under design or construction) will additionally meet the LTCP goals by the end of 2024.  They are BOS017 in Charlestown at the Mystic/Chelsea Confluence, and BOS062, BOS065, and BOS070/DBC on the Fort Point Channel.

That brings us to the remaining six challenging, or as the court has described them, "incorrigible" outfalls.  They are MWR201 at the Cottage Farm Facility, four outfalls along the Charles River itself, MWR018, 019, 020, and CAM005 (clustered on the Lower Charles), and SOM001A at Alewife Brook.  As to these six, the MWRA offers the bleak but candid assessment that no feasible or economically viable means have been identified that offers the possibility of bringing these outfalls into compliance with the LTCP volume and/or activation goals by the final 2024 Schedule Seven Milestone.[2]

---

[2] To be more precise, the MWRA is not ruling out the possibility that design and engineering solutions for each of the outfalls might be identified at some point, but even should that occur, the necessary design and construction work could not be completed before the expiration of the final Milestone.

*MWRA Annual Report for Calendar Year 2022 (2022 Annual Report),* at 4. The reasons that have led the MWRA to this conclusion are detailed in the *2022 Annual Report,* at 10-12. In its explanation, the MWRA describes the alternative possible solutions that have been considered and evaluated in each individual case. These include weir raising, gate changes, storage capture, and infrastructure greening depending on the specific outfall at issue.

Recognizing that the history of this now decades-long project has not been static nor has every insoluble problem encountered over its course remained unsolved, the court will reserve judgment on the problem outfalls until the final milestone is reached. I recognize, as the MWRA posits, that there may come a point of diminishing return at which spending an additional $100 for a $1 incremental benefit would make no sense from a public policy view. In the words of a distinguished former Justice: "The . . . reason that it matters whether the nation spends too much to buy a little extra safety is that the resources available to combat health risks are not limitless." Stephen Breyer, *Breaking the Vicious Circle: Toward Effective Risk Regulation* 18 (1993).[3]

---

[3] As the MWRA notes, "receiving water modeling demonstrated that the impact to water quality from these [six problem] outfalls was minimal; compliance with bacteria standards is 97.9-99.9% during the Typical Year

4

I would be remiss in failing to laud the commendable efforts that the MWRA has made over the past year (detailed at pages 15-17 of the *2022 Annual Report*) to meet with, inform, and elicit the views of stakeholders, community leaders, and environmental associations. I also note the close collaboration among the MWRA and the cities of Cambridge and Somerville in the updating of the CSO control plans as required by the Variances in the anticipation of a request for a 36-month extension from the Variances' current August of 2024 expiration date to August of 2027.

### ORDER

The MWRA will submit its next Compliance Report in accordance with the revised Schedule Seven.

SO ORDERED.

   /s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

when CSO is the only contributor. The most significant impact to water quality was from stormwater, where modeling showed that standards are met only 47-64% of the time when assessing stormwater contributions." *2022 Annual Report*, at 10 n.9.