UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 85-489-RGS

UNITED STATES OF AMERICA

v.

METROPOLITAN DISTRICT COMMISSION, et al.


CIVIL ACTION NO. 83-1614-RGS

CONSERVATION LAW FOUNDATION
OF NEW ENGLAND, INC.

v.

METROPOLITAN DISTRICT COMMISSION


ORDER ON
THE CHARLES RIVER WATERSHED ASSOCIATION'S and
THE MYSTIC RIVER ASSOCIATION'S
<u>MOTION TO INTERVENE</u>

January 7, 2026

STEARNS, D.J.

Before the court is a motion filed jointly by the Charles River Watershed Association and the Mystic River Association (the Associations) to intervene pursuant to Fed. R. Civ. P. 24 in this now four-decades-old litigation, either as a matter of right or by permission of the court. After

careful review of the extensive briefing, the motion will be denied for the reasons stated below.

As a formal matter, the motion is untimely, and in fact replicates a nearly identical motion denied by my predecessor Judge A. David Mazzone in what is now colloquially known as the Boston Harbor Case some 37 years ago. As Judge Mazzone observed then, and it remains true today, a motion to intervene is at its most vulnerable when the litigation phase of a case has been concluded by a judgment of the court, and where the late introduction of new parties to the litigation "will fundamentally change the dynamics of the processes at work . . . ." *See United States v. Metro. Dist. Comm'n*, 679 F. Supp. 1154, 1164 (D. Mass. 1988).

The court adds the following thoughts. Based on what is said in the pleadings, I believe that the concerns expressed by the Associations are based on a misapprehension of the roles of the Massachusetts Water Resources Authority (MWRA) staff, its Board of Directors, and the existing parties, and ultimately that of the court, in arriving at a final determination of alterations, if any, that will (or need) be made to the Long-Term [CSO] Control Plan as the result of the presently underperforming outfalls on the

Charles and Mystic Rivers.[1]  At present, the MWRA staff is in the process, as the court understands it, of developing a range of remedies that includes, at one end of the spectrum, increased limits for CSO discharges into the rivers. and a reclassification of the Charles and Mystic Rivers from a Class B to a lower Class B (CSO) level, to, at the other end of the spectrum, the adoption of the full-throated remediation to which the Associations are committed.

This commitment, while understandable, underscores for the court that the primary motive of the Associations in seeking to join the litigation as parties is not to offer engineering or scientific expertise that is not already available to the court (in abundance), but to enhance their ability to promote their preferred outcome in the negotiations (undertaken with the court's encouragement) in the "expectation of a comprehensive agreement resolving or at least narrowing [the] outstanding issues."  Dkt. # 1942 at n.2.  The court shares the MWRA's concern that the injection of these advocacy groups as

---

[1] The Associations state in their Memorandum that "[n]ow that the MWRA's long-term CSO strategy is known, the significant prejudice to the [Associations] and their members . . . is imminent and undeniable."  Dkt. #1942 at 11.  As the MWRA accurately responds, this concern comes "too soon" as the staff recommendations are only that, a draft plan that is not complete and will not be complete until approved or disapproved by the Massachusetts Department of Environmental Protection sometime after January 2027 and "possibly not until August 2029."  MWRA Opp'n, Dkt # 1951 at 2.

additional parties in these negotiations will, at this delicate turn, "seriously jeopardize and potentially delay the resolution" of the outstanding disagreements. MWRA Opp'n, Dkt # 1951 at 13. Let me stress that this model of encouraging the parties to collaborate confidentially with a view towards simplifying the issues the court needs address is not a late invention, but the model that Judge Mazzone implemented at the very outset of the Boston Harbor case and one that this court faithfully has followed since.[2]

Third, the court does not accept the Associations' argument that its interests are not adequately represented by the existing parties, particularly the Conservation Law Foundation (CLF), in the outcome of the case. Ass'n Mem., Dkt # 1942 at 9-10.[3] Nor is there any heft to the suggestion that the

---

[2] As the court observed in its Boston Harbor Progress Order 253 (June 10, 2024), Dkt # 1915 at n.5: "The court appreciates the constructive tone of the Response of the United States and the Environmental Protection Agency. The United States and EPA acknowledge the impressive progress made by the MWRA in meeting the mandate of the Clean Water Act (if "not there yet") and reminds us that the parties have over the years been able to collaboratively resolve any disagreements over implementing the required statutory and regulatory controls in a manner satisfactory to the court and the Stipulations of the parties."

[3] Despite the CLF's lukewarm acquiescence to this view, *see* CLF Mem., Dkt # 1950 at 6, based on my years of experience with the strength of the CLF's advocacy in this case, I disagree. I also note that the CLF's position is based on the constraints of its being a participant in the confidential negotiations that it suggests hampers its ability to serve as an untrammeled public spokesperson for the Associations' views, an argument I do not agree with in the first instance. I also note that the issue of public constraint on

court has not been open to (and has indeed encouraged) the Associations to express their views fully in the litigation by way of *amici* briefing (which the court has always in the past and will continue to accept). The court has also consistently encouraged the MWRA to meet regularly with the Associations both to inform them of progress with the implementation of the LTCP and to take their views into account. I have no reason to doubt but that the MWRA has followed the court's instructions in this regard, as it reports in its Opposition to the Motion to Intervene. *See* Dkt # 1951 at 10-12, n.11.

Finally, I remind the Associations (and all parties) that the final decision on the scope of any alterations to the existing LTCP remains vested in the court. The court has made general observations on the considerations that it may well bring to bear on any final proposal(s) as guidance to the parties.[4] However, it will not make any final determination until that presentation is made, be it in 2027 or 2029.

---

what can be said, to the extent there is such, is not remedied by inserting the Associations into the very same negotiations under which they would be expected to be bound by the same considerations of confidentiality.

[4] *See* Boston Harbor Progress Order 253 (June 10, 2024) at 4 ("Recognizing that the history of this now decades-long project has not been static, nor has every insoluble problem encountered over its course remained unsolved, the court will reserve judgment on the problem outfalls until the final milestone is reached. I recognize, as the MWRA posits, that there may come a point of diminishing return at which spending an additional $100 for a $1 incremental benefit would make no sense from a public policy view.").

<u>ORDER</u>

For the forgoing reasons, the Motion to Intervene is <u>DENIED</u>.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE